IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUDOLPH GRIFFIN,<br><br>      Petitioner,<br><br>   vs.<br><br>JOHN BURGE, Superintendent, Auburn Correctional Facility,<br><br>      Respondent. | No. 9:08-cv-00934-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 46] |

  Rudolph Griffin was convicted in New York state court of state offenses and sentenced to prison. On September 2, 2008, after his state conviction became final, he petitioned in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Docket No. 1. On February 13, 2012, his petition was denied and judgment entered against him. Docket Nos. 41, 42. This Court and the Second Circuit Court of Appeals denied a certificate of appealability ("COA") after finding under 28 U.S.C. § 2253 (c)(1) and (2) that Griffin had not made a substantial showing of the denial of a constitutional right. Docket Nos. 41, 45. On June 10, 2014, Griffin filed a motion for relief from the judgment, *i.e.* the denial of his habeas petition, pursuant to Federal Rule of Civil Procedure 60(b)(6). Docket No. 46. Because the motion is untimely, and even if it were timely it would be without merit, the motion will be denied.

  Griffin makes two arguments. They will be considered in order.

I

  First, Griffin argues that the court denied his petition without independently determining whether his constitutional rights were violated. Docket No. 46 at 7-12. He relies upon three decisions of the Second Circuit Court of Appeals: 1) *Rudenko v. Costello*, 322 F.3d 168 (2d Cir.

2003); 2) *Miranda v. Bennett*, 322 F.3d 171 (2d Cir. 2003); and 3) *Gandarilla v Artuz*, 322 F.3d 182 (2d Cir. 2003) (hereafter collectively referred to as "the Trilogy"). Those cases address a number of § 2254 appeals from district courts in which the district court had adopted by reference the holdings in the state court regarding federal constitutional issues or the arguments presented by the state attorneys in the habeas proceedings and denied a COA. *Rudenko*, 322 F.3d at 169-70. The Second Circuit held that, in order to review the district court judgment and determine if a COA was appropriate, it must understand what the district court decided. *Id.* at 170. Therefore each panel would review the record and if the district court's reasoning was understandable if would go ahead and decide whether to grant a COA, but if it was not possible to determine the district court's reasoning it would remand for clarification. *Id.* Most of the cases permitted an immediate ruling but some had to be remanded. *Id.*

It is clear the Trilogy has nothing to do with this case. When this Court denied Griffin a COA, he renewed his request with the Second Circuit. Docket No. 43. The assigned panel did not remand this case, it considered the record and denied a COA. Docket No. 45. It is therefore implicit that the appellate court understood this Court's reasoning. That is all the Trilogy requires.

Griffin infers a sub-text in the Trilogy that precludes this Court from deferring to the state court's fact finding. Second Circuit authority requires that this Court defer and presume that state court fact findings are correct and only reject such a finding if the petitioner proves the contrary by clear and convincing evidence. *See, e.g.*, *Cotto v. Herbert*, 331 F.3d 217, 232-33 (2d Cir. 2003). Congress, as interpreted by the Supreme Court, has limited habeas review of state court decisions but has not eliminated it. Of course, the district court must determine what the

2

state court held and test any holdings against constitutional law established by the United States Supreme Court by applying a reasonableness test to both conclusions of law and findings of fact. That was done in this case; the Court did not simply adopt by reference the decision of the state court. It reviewed it.

II

Griffin next argues that this Court's order denying his habeas petition was premature. Docket No. 46 at 12-15.

The habeas petition in this Court was initially filed in September of 2008. Docket No. 1. The case was reassigned to the undersigned on February 1, 2012. Docket No. 40. The record was reviewed with the aid of an experienced law clerk and a decision filed 12 days later on February 2, 2012. Docket No. 41. Judgment was entered that same day. Docket No. 42. The petition had been fully briefed and was ripe for decision. There was no reason to delay.

Early in this case, Griffin sought pursuant to Rule 45 a subpoena duces tecum from the clerk of the state county court, seeking to obtain a copy of a letter which he believed was in the possession of Judge Smith, who took the plea of and eventually sentenced a witness who testified against Griffin. The clerk refused to furnish the subpoena, and Griffin applied to this court for an order directing the clerk to furnish the subpoena. Docket No. 5. Judge Thomas McAvoy, to whom this case was originally assigned, denied the motion without prejudice. Docket No. 19. Griffin seems to argue that the decision by Judge McAvoy created a condition precedent that had to be fulfilled before this case could be decided and that this Court after reassignment either intentionally or negligently decided the case with the pre-condition unfulfilled. Griffin's claim is therefore that this Court made an error of law. Griffin may also be

3

arguing that the speed with which this Court decided the case after reassignment surprised him. It would appear that Griffin's contentions fall within Rule 60(b)(1) and not 60(b)(6).[1]

In order to understand this argument a little background is necessary. One of the issues presented in Griffin's habeas petition was the contention that the prosecution violated *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), and *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by failing to disclose a plea agreement that co-defendant Jose Javier had reached prior to Griffin's trial, at which Javier testified against Griffin. Griffin also argues that the prosecution committed a second *Brady* breach because Javier perjured himself when he discussed his understanding of his expected sentence. Griffin argues that the New York appellate court's discussion of this issue and its factual findings were erroneous and that this Court erred in accepting those findings.

Griffin is proceeding *pro se* and both the Supreme Court and the Second Circuit caution that the pleadings and contentions of *pro se* litigants should be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir.

---

[1] Griffin has argued consistently that it was not necessary to make a motion and show good cause in order to obtain a subpoena duces tecum pursuant to Rule 45. In Griffin's view, he had an absolute right to a subpoena from the clerk who had a ministerial duty to provide it to him. Griffin denies that "discovery" was necessary to procure a document from a third party for inspection and copying. Griffin is in error. It has long been established that Rule 45 must be read together with the discovery rules and that, where the discovery rules require a motion supported by good cause, that requirement is binding on litigants. 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2452 (3d ed. 2012). Generally, civil litigants are no longer required to make a motion and show good cause, *see* FED. R. CIV. P. 34, but habeas petitioners are, *see* Rule 6 of the Rules Governing Section 2254 Cases in the U.S. District Courts ("Habeas Rules"). *See also Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course (quoting *Harris v. Nelson,* 394 U.S. 286, 295 (1969)). Habeas Rule 6(a) requires the procedure followed by Judge McAvoy in this case.

1983). Liberally construing Griffin's argument, he does not dispute that Javier's plea agreement was thoroughly discussed at trial. He acknowledges the state court finding that, after entering his plea, Javier was allowed a furlough and, while on furlough, fled in violation of the conditions of his release, was arrested and returned to custody, and thereafter testified against Griffin. Griffin does question the state court's statement that, because of Javier's flight, the agreement for a lesser sentence "was no longer in effect."[2] Griffin acknowledges the state court's further statement: "Contrary to [Griffin's] assertions, the fact that County Court, in its discretion, imposed a sentence that was similar to that called for by the plea agreement does not demonstrate either prosecutorial misconduct or concealment of an additional arrangement." Docket No. 41 at 9 (quoting *People v. Griffin,* 851 N.Y.S.2d 718, 720 (N.Y. App. Div.2008)).

Griffin argues that there was an "additional arrangement"; specifically, he appears to contend that, sometime after Javier's return to custody but before he testified against Griffin, Javier, his attorney Remy R. Perot and Robin Engler, a deputy district attorney assigned to Javier's case, reached an agreement that Javier would not be penalized for absconding and would receive the sentence agreed to in the plea agreement. Griffin seems to believe that Perot and Engler presented this agreement to the Honorable Martin E. Smith, the county court judge who would sentence Javier, and obtained his agreement. Finally, he assumes that this second agreement was communicated to Javier prior to his testimony and that Javier was therefore

---

[2] It appears that the New York court held that the Plea Agreement was abrogated by operation of law when Javier absconded  The legal effect of Javier's flight on his pending sentence is a question of New York state law and therefore the New York court's determination is binding on this court. *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011). The fact that the prosecution was no longer bound by the agreement did not prevent it from ratifying the agreement at a later time. It is Griffin's burden to show by clear and convincing evidence that the prosecution ratified the original agreement before Javier testified against Griffin.

5

aware that he would not be penalized for absconding and would receive the previously agreed upon sentence.

It is this "second agreement" which Griffin contends the prosecution suppressed. Further, he contends that, because Javier was aware of this second agreement and that he would receive the sentence discussed in his plea agreement, he lied when he testified at Griffin's trial that he did not know what sentence he would receive. Finally, Griffin contends that, since the prosecutor knew that Javier did know what sentence he would receive but did not correct his false statement, the prosecutor suborned perjury and committed prosecutorial misconduct.

It is important to recognize that to invoke *Brady* the second agreement would have to have been reached before the close of Griffin's trial on May 25, 2005. An agreement to forgive Javier's flight reached later would be irrelevant. By the same token, if Javier's eventual sentence was uncertain when he testified at Griffin's trial, the fact that it became certain at his sentencing on July 6, 2005, would not make his testimony false let alone perjurious.

Griffin has no direct evidence of this second agreement.[3] He has not obtained an affidavit or even an acknowledgment from any of the alleged parties to the agreement.[4] Griffin

---

[3] In this decision, the Court uses the phrase "second agreement" to describe Griffin's claim. Griffin argues that the original plea agreement was never not in effect but that is a matter of state law which the state court resolved against Griffin and that resolution is binding on this Court. In order to prevail, Griffin must show that a new arrangement was made between the state and Javier after he absconded but before he testified against Griffin. It is a matter of semantics whether we call the new arrangement a second agreement, a ratification of the earlier plea agreement or a restoration of Javier's rights under the original plea agreement. The important point is that Griffin must prove that there was an agreement and that it was reached after Javier absconded but before he testified. Any agreement reached after the end of Griffin's trial would not invoke *Brady* or *Giglio*. Evidence of such a later agreement would only be admissible here if it pointed to what this Court describes as a second agreement.

[4] It is true that Respondent did not obtain an affidavit from any of the parties to the
(continued...)

relies upon circumstantial evidence and particularly a transcript of Javier's sentencing hearing before Judge Smith. In order to strengthen his position, Griffin notes that, when asked to comment on an appropriate sentence during the hearing on July 6, 2005, Mr. Perot, counsel for Javier, stated that he had sent the court a letter on June 30, 2005, setting out Javier's position and his comments and did not wish to say anything else. The prosecutor acknowledged, implicitly, that she had received a copy of the letter and stated "No" when asked if she disagreed. The contents of the letter were not further described.

In context, the State's position at Griffin's trial was that Javier had a plea agreement which was disclosed to the jury but that he had forfeited his rights under that agreement by absconding. As a result, Javier faced "open sentencing" where the parties could each state a position regarding an appropriate sentence for Javier and, after hearing from the parties, the judge would in his discretion impose a legal sentence. The State does not deny, and the state court found that, in fact, the judge imposed a sentence similar to the one addressed in the plea agreement. *Griffin*, 851 N.Y.S.2d at 720. The State's argument is that, until the sentence was imposed, Javier did not know for certain what it would be.

In contrast, Griffin argues that it was clear to Javier from the beginning that he would suffer no additional penalty for absconding. Griffin believes that the jury would be more apt to find that Javier tailored his testimony to please the prosecutor if he had a guaranteed minimum sentence than if he was facing open sentencing and at the mercy of the judge and prosecutor.

---

[4](...continued)
alleged second agreement denying such an agreement existed, but the burden was on Griffin to prove the existence of a second agreement by clear and convincing evidence. The State had no burden. *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (federal court may not rely solely upon the absence of evidence to rebut presumption that state court accurately found the facts).

Griffin is convinced that Perot's letter is the "smoking gun" which uncovers the plot to suppress the second agreement. He believes that agreement is memorialized in the letter and that Perot, Engler and Judge Smith have taken steps to hide the letter and its contents from him.

There is, however, no mention at Javier's sentencing hearing that Javier was automatically entitled to a specific sentence and no reference to an "agreement" reached prior to Javier's testimony at Griffin's trial. From the discussion at Javier's sentencing on July 6, 2005, it appears likely that the letter addressed Javier's reasons for fleeing and extenuating circumstances which might excuse him from sanction. It appears that this is the way Judge Smith interpreted it because he mentioned "extenuating circumstances" when he imposed sentence. It is also relevant that Javier was separately charged with a violation of probation for absconding during his furlough. That charge was still pending at the time of Javier's sentencing. The petition to revoke probation was dismissed at that time. A careful review of all the materials in the record establishes that it is at least as likely that the letter did not address an antecedent agreement to forgive Javier's absconding and not increase his sentence as it is to have addressed such an agreement. Griffin has failed to show good cause for the issuance of a subpoena.

Griffin thereafter made a number of attempts to obtain a copy of the letter. He wrote to Perot and apparently received no response. He wrote to the clerk of the county court and was told that there was no copy of the letter in Javier's file. He wrote to the District Attorney and was told that there was no copy of the letter in the District Attorney's closed file. Finally, he

wrote to Judge Smith, who denied the request, noting that the letter was not in Griffin's file and was not "filed" with the court.[5]

Griffin then filed a series of motions with this Court seeking a subpoena duces tecum directed to Judge Smith to obtain a copy of the letter and an order expanding the record in this case to include the letter once it was received. Docket Nos. 6 (letter motion dated November 20, 2008, and denied without prejudice December 4, 2008), 14 (letter motion dated April 24, 2009, and denied without prejudice June 2, 2009), 15 (letter dated May 6, 2009), 21 (letter motion dated August 31, 2009, and denied October 2, 2009), 24 (letter dated October 21, 2009). Griffin supported his motions with copies of the transcript of Javier's sentencing hearing and copies of the letters he received from the court clerk, the District Attorney and Judge Smith.

Judge McAvoy denied Griffin's motion for a subpoena duces tecum. Docket No. 19. He reasoned that Griffin had failed to show good cause and failed to establish that the letter would aid in the resolution of this case. The denial was without prejudice and added the language which Griffin believes established a condition precedent to a decision on his habeas petition. Judge McAvoy stated, "However, should this court subsequently conclude that it would be beneficial to this court if it was in possession of the letter sought by way of the requested subpoena, this court will, *at that time*, expand the record and issue the requested subpoena relating to the Perot letter." Docket No. 19 at 3 (emphasis in original).

---

[5] Griffin seems to consider Judge Smith's response to his request suspicious. Assuming that Judge Smith retained a copy of the letter in his personal papers, there are many reasons why he would not turn it over to Griffin without a court order. Matters considered by a judge in sentencing one defendant are usually considered confidential and not available to prison inmates against whom the sentenced inmate testified.

Apparently unaware of this order, Griffin filed a further motion for issuance of a subpoena dated August 31, 2009, *see* Docket No. 21, which was opposed, *see* Docket No. 22, and to which Griffin replied, *see* Docket No. 23. The District Court denied the motion at Docket No. 25, referring Griffin to the order at Docket No. 19.

The order at Docket No. 19 does not indicate what, if anything, Judge McAvoy intended might trigger reconsideration of the motion for subpoena duces tecum. It is possible that he had no specific matter in mind. It is also possible that, in light of Griffin's arguments, Judge McAvoy was looking for a further showing of good cause, including some evidence supporting an inference that there was a second agreement prior to the completion of Griffin's trial on May 25, 2005, or that the letter identified might evidence a second agreement. We do not know. But we do know that: 1) Judge McAvoy did not defer ruling on the motion for a subpoena but rather denied it; 2) the only matters in the record addressing the letter—the transcript of Javier's sentencing and the letters Griffin filed regarding available copies— was before Judge McAvoy at the time he decided the order at Docket No. 19; 3) from June 2, 2009, when that order was entered, until February 1, 2012, when the matter was reassigned to the undersigned, Judge McAvoy made no further reference to the order at Docket No. 19; 4) Griffin never filed any additional evidence regarding the letter or renewed his motion for a subpoena; and, 5) as a result, there were no motions pending at the time of reassignment. Thus Griffin failed to show good cause and explain how the letter would help decide his case on June 2, 2009, and Judge McAvoy therefore denied the motion for a subpoena. These defects were not remedied at the time this case was reassigned or when the case was decided, and have not been remedied to date. There

was therefore no reason to reconsider Judge McAvoy's order at Docket No. 19 before deciding Griffin's petition.[6]

A motion for relief from judgment under Rule 60(b)(6) must be brought within a reasonable time. The burden is on the movant to justify any delay. In this case, the delay was over two years between the decision denying the petition for a writ of habeas corpus—February 12, 2012—and the filing of the motion for relief from judgment—June 10, 2014. A 60(b)(6) motion may not be pursued if another provision of Rule 60 is applicable to the claim. *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175-76 (2d Cir. 2009). It appears that Griffin's main claim is either that this Court negligently or inadvertently overlooked the order at Docket No. 19 and did not reconsider the denial of his request for a subpoena or that this Court's order shortly after reassignment surprised him. If so, Griffin's motion would be covered by Rule 60(b)(1), which provides relief for mistake, inadvertence, surprise, or excusable neglect, and not Rule 60(b)(6).[7] Such a motion must be brought within one year. FED. R. CIV. P. 60(c)(1). Assuming that Griffin has some other concern not spelled out in Rule 60(b)(1)-(5), the Second Circuit has held that he must justify the delay, and this Court must balance the interest in finality against the reasons for the delay. Griffin has not addressed the delay in this case. *See Kellogg v. Strack,* 269 F.3d 100, 104 (2d Cir. 2001) (*pro se* prisoner's 26-month delay in bringing Rule 60 motion seeking relief

---

[6] Even where cases are reassigned to a different judge, there is "a general practice of refusing to reopen what has been decided," *Wright v. Cayan*, 817 F.2d 999, 1002 n.3 (2d Cir. 1987), except where there exists "'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).

[7] The Second Circuit considers claims that the district court misinterpreted the law or made other mistakes or errors of law to be governed by Rule 60(b)(1) and not 60(b)(6) and therefore governed by the 12-month limitation period. *United Airlines, Inc.*, 588 F.3d at 175.

11

from judgment denying a § 2254 petition was, absent mitigating circumstances, patently unreasonable); *Truskoski v. ESPN, Inc.* 60 F.3d 74, 77 (2d Cir. 1995) (Rule 60(b) motion made 18 months after judgment was not made within a reasonable time). The fact that Griffin is *pro se* and imprisoned, standing alone, does not excuse delay in bringing a Rule 60 motion. *Kellogg*, 269 F.3d at 104.

A Rule 60 motion is not a substitute for an appeal. *United Airlines Inc.*, 588 F.3d at 176. Here Griffin knew everything on February 13, 2012, that he knows today. If he felt that this Court's handling of his motion for a subpoena duces tecum was error he should have asked in his request for a COA that the Second Circuit consider that claim. He apparently did not do so. Rule 60 provides him no relief at this time.

The state appellate court decided on its merits Griffin's *Brady* claim that the prosecution concealed a second agreement re-instating Javier's plea agreement. Consequently, this Court must decide the habeas petition on the record in state court and may not expand the record to include matters that were not presented to the state court. *See Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011). Griffin has not addressed *Cullen.* The letter he wishes to obtain was not before the state court and Griffin has not explained why *Cullen* does not bar his claim.[8]

---

[8] *Cullen's* limitation on factual development in the district court only applies to claims that were adjudicated on the merits in state court. Justice Sotomayor posed the question whether a state court decision deciding one *Brady* claim on the merits would bar an evidentiary hearing to develop facts supporting an independent *Brady* claim. 131 S.Ct. at 1417 n.5. The majority reserved judgment on this issue. 131 S.Ct. at 1401-1402 nn. 10-11. It is not necessary to decide whether reservation of judgment precludes a finding of "clearly established federal law" under § 2254(d)(1) because Griffin offers the letter as possible evidence on the specific *Brady* claim regarding Javier's plea agreement decided by the state court. It is not a new claim.

In conclusion, the instant motion is untimely. If it were timely, it would be without merit. Concealment of evidence sought for impeachment only violates *Giglio* and *Brady* if it prejudiced Griffin. In other words if the matter concealed was material. In context, evidence is material if its unavailability impacts our confidence in the outcome. It is not necessary for Griffin to prove that it is more probable than not that had the jury evidence of the second agreement which Griffin believes exists it would have acquitted him. It is only necessary that he establish that the evidence exists and that its absence casts doubt on the verdict against him. *See United States v. Agur,* 427 U.S. 97, 108-113 (1976). In determining whether allegedly concealed evidence is material we must look to the other evidence against the defendant. *Smith v. Cain,* 132 S. Ct. 627, 630-31 (2012).

Respondent makes a strong case that the evidence against Griffin was overwhelming. He was charged with kidnaping a young woman and carrying her off in his vehicle. Her nine-year-old daughter called 911, reported the kidnaping and identified Griffin's vehicle. Shortly thereafter, the vehicle was sighted by the police and pulled over, and Griffin and his two confederates and the victim were found in the car. The victim and both co-defendants testified against Griffin.

As the First Circuit noted in a similar case, *Bader v. Warden,* 488 F.3d 483, 489 (1st Cir. 2007), regardless of any second agreement secret or otherwise, the jury knew that Javier already had ample reason to tailor his testimony to please the prosecutor: his plea was before Griffin's trial and his sentencing was scheduled for a later time. Javier thus had reason to please prosecutors whose recommendations might be persuasive to the sentencing judge, particularly because Javier had breached a promise to that judge when he absconded. But all this was known

13

at the time of Griffin's trial when Javier was subject to full cross-examination as to the details of his testimony and his motives for helping the prosecution. *See id.* To show materiality, Griffin must persuade the court that Javier would be more vulnerable to the prosecutor if he had a second arrangement guaranteeing him a minimum sentence then if he appeared before the judge and prosecutor for "open sentencing." Griffin has failed to satisfy this burden. *See, e.g.*, *Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir. 2004) (concluding that evidence of "real plea agreement" was not material where jury learned that the prosecution had a plea agreement with witness that had been revoked and witness was thoroughly cross-examined about his motive to testify for the prosecution to encourage reinstatement of the plea agreement).

While Respondent makes a strong argument that the evidence against Griffin was overwhelming, the state court found no *Brady* violation and never reached the question of whether a concealed agreement would be prejudicial. This Court did not discuss prejudice in its opinion either. Since the present motion is untimely and without merit, it is not necessary to consider prejudice at this time.

**IT IS THEREFORE ORDERED THAT** the Motion Pursuant to Rule 60(b) at Docket No. 46 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c);[9] *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

---

[9] In the Second Circuit, an appeal from the denial of a Rule 60(b) motion seeking relief from a judgment denying a habeas petition requires a COA. *Kellogg*, 269 F.3d at 102-04.

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))). Where, as in this case, a denial of a Rule 60 motion is involved, the petitioner's burden is to prove that reasonable jurists would differ regarding whether the district court abused its discretion in denying the motion for relief from judgment. *See Kellogg*, 269 F.3d at 104. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: August 7, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge